## Gordy v. Buscillo et al.

*Samuel Halbert*, for plaintiff; *I. Merton Hutkin*, for defendant.
*Arthur G. Dickson*, for garnishee.

LEWIS, J., December 19, 1932.—We have been asked to give judgment on answers filed by the Metropolitan Life Insurance Company, garnishee, to interrogatories propounded by the plaintiff in the attachment.

The defendant is one of the "soliciting agents" of the garnishee. He receives commissions upon business procured through his efforts, in addition to a weekly salary of $29.47. He also has an interest in the garnishee's "group insurance and retirement plan," evidenced by a certificate, a copy of which is attached to the answers, issued to him on April 1, 1929. By the terms of that certificate the garnishee undertook, in consideration of certain contributions made by the defendant, to pay certain benefits, including: (a) Life insurance payable upon the employe's death to Clara Buscillo, defendant's wife; (b) temporary disability insurance; (c) total and permanent disability insurance; (d) retirement annuity benefits, payable monthly, commencing on April 1, 1959.

Under a written authorization of the defendant employe, the garnishee retains and holds the sum of $250, deposited with it by the defendant, for the

garnishee's protection against any loss by reason of: "(a) Any loans or cash advances made by the company; (b) any deficiency in [defendant's] accounts as . . . agent, or (c) any violation of the rules and regulations of the company." The writing also expressly authorizes the garnishee, in the event of any deficiency or loss sustained by it on the agent's account, to apply the deposit, or so much thereof as may be requisite, toward its reimbursement, while so much of it as is not required for the purpose indicated in the written authorization is to be returned by the garnishee to the defendant "at the time of the settlement of [defendant's] salary account under the contract. . . ."

Garnishee's answers set forth that the defendant's employment has not been terminated, and that it cannot presently (because of numerous contingencies) determine what portion, if any, of said deposit fund of $250 the garnishee may at some future time be obliged to repay to the defendant.

Three distinct questions are presented by this rule for judgment:

1. With regard to defendant's salary and commission account with the garnishee, we have not been referred to any admission in the garnishee's amended answers that there is any sum whatever presently due by the garnishee to the defendant. There is a clear averment that the garnishee has paid to the defendant all salaries and commissions that have accrued. Moreover, the Act of April 15, 1845, P. L. 459, Sec. 5, supplementing the Act of June 16, 1836, P. L. 755, provides: "The wages of any laborers, or the salary of any person in public or private employment, shall not be liable to attachment in the hands of the employer." The courts have on numerous occasions considered the persons intended to be protected by this legislation. It is said to be "the obvious purpose of this act to enable laborers and persons in public or private employment to receive from their employers compensation for their personal services without hindrance from their creditors. The miner who is paid by the ton, the mechanic who is paid by the piece, and the clerk or salesman who is paid by commissions on his sales, are as much within its protection as if they were paid by the day, week, month or year:" Hamberger v. Marcus, 157 Pa. 133, 136.

The terms "wages" and "salary" under the Act of 1845 have been construed to include all moneys paid for personal services, whether in the form of regular payments or in the form of commissions, or in some other manner which makes the amount and time of payment dependent upon the extent of services rendered the employer: Danziger v. Ferber, 272 Pa. 193, where a bonus payable in addition to wages was held exempt.

Compensation based on a percentage of the payroll of employes was held within the protection of the statute: H. F. Watson Co., Inc., v. Christ, 62 Pa. Superior Ct. 604.

Commissions of a superintendent or supervising architect of building construction were held exempt from attachment: Central Trust Co. v. Rieger et al., 25 Dist. R. 1074.

It is obvious from the foregoing that the defendant's salary or commission account cannot be seized and applied to satisfy plaintiff's claim.

2. With regard to the certificate issued by the garnishee as above outlined, there is no indication in the garnishee's answers to the interrogatories that defendant has become entitled to any moneys by virtue of the occurrence of any of the contingencies designated therein. The retirement annuity does not become payable until April 1, 1959, and then only in the event of insured's continuation in the employ of the garnishee.

The third clause of the policy, providing for the contingency of "termination of employment," sets forth several privileges and options vested in the employe. He may have issued to him a policy of life insurance "in any one of the forms

customarily issued by the insurance company;" he may receive a cash surrender value, calculated in the manner set forth in the policy; or he may elect to have the insurance company grant a deferred annuity for a reduced amount, which may either be "paid up, or one for which stipulated payments shall thereafter be made by him direct to the insurance company."

The exemption statute of June 28, 1923, P. L. 884, has recently received interpretation in an opinion by Kirkpatrick, J., in the Eastern District of Pennsylvania, in the case of In re Lang, 20 F. (2d) 236 (affirmed 24 F. (2d) 254). The court there concludes "that the effect of the acts of 1919 and 1923 was to exempt from the claims of creditors the cash surrender value of policies of the character referred to in those acts. There is nothing in the language of the statutes which would lead to a different conclusion. The argument for the trustee, based on the use of the words 'the net amount payable,' is not convincing. As the referee stated in his opinion, these words 'might be held to mean either the net amount payable after the death of the insured, or the net amount payable upon the surrender of the policy.' They are quite as applicable to one as to the other, and simply mean that the fund exempted is that which arises after deduction of loans or other amounts properly due to the insurer."

The service of a summons in garnishment does not change, impair or interrupt the contractual relations existing between the defendant and the garnishee.

"The garnishee cannot be held liable in such a manner as to deprive him of any bona fide rights growing out of his contractual relationship with defendant. If by any preëxisting bona fide contract the accountability of the garnishee to defendant because of the debt or property has been removed or modified the garnishee's liability is correspondingly affected. Plaintiff cannot compel the garnishee to perform his contract with the principal debtor otherwise than in the manner provided by the contract:" 28 C. J. 245, 246.

The right to determine whether or not the liability of the insurer to the insured should be created, by virtue of the exercise of certain options provided for in the policy of insurance, is not an attachable claim prior to the exercise of the option by the party in whom the right is vested. We have recently had occasion to discuss the effect of an attachment upon such options in life insurance policies, in an opinion filed in Martin et al. v. Balis et al., 18 D. & C. 187. We then concluded, as we do now, that the garnishee's answers, in so far as the certificate herein issued is concerned, do not disclose liability of the garnishee to the defendant, subject to attachment.

3. The question whether the sum of $250, deposited by the defendant's employe, is subject to seizure by plaintiff in execution, remains to be considered.

It is evident that, under the terms of the deposit a trust relationship is created and not one of debtor and creditor: Carl v. Grand Union Co., 105 Pa. Superior Ct. 371.

Where funds are deposited for the payment of specific claims or as security for a definite purpose, there is an appropriation or pledge that they be used for such special purpose, which places them beyond the grasp of attaching creditors of the depositor: Wyoming Construction Co. et al., to use, v. Franklin Trust Co., 12 D. & C. 103, affirmed in 298 Pa. 582.

Plaintiff stands in no better position as to the chose attached than his debtor, and any defense good against the latter will prevent recovery against the garnishee.

Of course, contingency as to the amount of garnishee's liability will not prevent the attachment where the claim admitted is an existing obligation, the amount of which, although presently uncertain, is capable of definite ascertainment in the future: 28 C. J. 133. At any rate we think "the proper course

is to require more specific answers or to direct an issue for the ascertainment of the particular facts. In this way the debtor, the creditor and the garnishee may be protected in the enjoyment of their respective rights in relation to the matter under investigation:" Hamberger *v.* Marcus, supra.

We can find in the garnishee's answer no admitted liability in any amount for which judgment might properly be entered.

Plaintiff's rule is discharged.